[Cite as *In re Adoption of M.F.*, 2014-Ohio-3801.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: M.F.

C.A. No.     27166


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     2013 AD 16

DECISION AND JOURNAL ENTRY

Dated: September 3, 2014

CARR, Judge.

{¶1}    Appellant, David O., appeals from the judgment of the Summit County Court of Common Pleas, Probate Division.  This court affirms.

I.

{¶2}    M.F. was born on December 9, 2002.  Richard F. ("Father") and Linda H. ("Mother") were listed as the biological father and mother, respectively, on the child's birth certificate.  The parents were married at the time of birth, but divorced in 2006 in Mahoning County, Ohio.  Father was ordered to pay $476.38 per month in child support.  Later, M.F.'s mother married David O. ("Stepfather").

{¶3}    Father has been unemployed since 2006.  Initially, he supported himself by living on proceeds from the sale of a home.  After the proceeds of the home sale were exhausted, Father relied on unemployment and retirement funds to support himself.   Eventually, his retirement savings were exhausted as well.  Father now survives by living with his brother free of charge

and receiving money from family members to help pay his bills. Father's child support order requires him to pay $476.38 per month. He made no child support payments after August 19, 2011.

{¶4} On May 12, 2010, the Municipal Court of Allegheny County, Pennsylvania, issued an order preventing Father from having any contact with M.F. The order stemmed from allegations that Father sexually abused M.F. A criminal investigation of Father began on May 13, 2010. Father was ultimately charged with indecent assault of a person less than 13 years of age and endangering the welfare of children.

{¶5} On January 9, 2013, the criminal case against Father went to trial. He was acquitted on January 13, 2013. After the case was resolved, the order of the Allegheny County Municipal Court, which prevented Father from having any contact with his child, terminated.

{¶6} Three days after his acquittal, on January 16, 2013, Father attempted to contact Mother and Stepfather via a court-approved email to continue with the previous court-approved visitation schedule. Father did not receive a response. On January 18, 2013, Father attempted to contact Mother through her work email. Father received no response to this attempted contact.

{¶7} While Father's criminal case was pending, Mother and Stepfather relocated to Summit County. On February 14, 2013, Stepfather filed a petition for adoption with the Probate Division of the Summit County Court of Common Pleas. Stepfather sent notice of the petition to Father; however, Father did not receive the notice because it was mailed to the wrong address. Father was subsequently successfully served by regular mail. In the petition, Stepfather asserted that consent of the biological father for adoption of M.F. was not required because Father had failed to provide more than de minimis contact with the child and had failed to provide

maintenance and support for the child during the one year period prior to the filing of the petition without justification, as required by R.C. 3107.07.

{¶8} Father filed an objection to the petition for adoption on March 26, 2013. After holding an evidentiary hearing, the probate magistrate denied Stepfather's petition upon finding that Father was justified in failing to have contact with the child or pay support for the child during the requisite period. Stepfather filed timely objections to the magistrate's decision. Father filed a response to Stepfather's objections. After considering Stepfather's objections, the probate court overruled them and adopted the magistrate's decision.

{¶9} Stepfather filed an appeal that was dismissed by this Court for lack of a final, appealable order. The Probate Court subsequently issued an opinion independently entering judgment. Stepfather filed a timely appeal in which he raises two assignments of error for review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN SUSTAINING THE MAGISTRATE'S DECISION IN THAT THE MAGISTRATE RULED THAT THE CONSENT OF THE BIOLOGICAL FATHER WAS NECESSARY IN WHICH TO PROCEED WITH THE PETITION FOR ADOPTION BY THE STEP-PARENT, [DAVID O.], WHEN THE TRIAL COURT FOUND THE BIOLOGICAL FATHER WAS JUSTIFIED IN PAYING NO (0) FINANCIAL SUPPORT FOR THE BENEFIT OF THE MINOR CHILD.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT ERRED IN SUSTAINING THE MAGISTRATE'S DECISION IN THAT THE MAGISTRATE'S DECISION INDICATED THAT THE CONSENT OF THE BIOLOGICAL FATHER WAS REQUIRED IN WHICH TO PROCEED WITH THE PETITION FOR STEP-PARENT ADOPTION IN THAT THE BIOLOGICAL FATHER WAS JUSTIFIED IN NOT HAVING ANY CONTACT WHATSOEVER WITH THE MINOR CHILD IN EXCESS OF ONE YEAR PRIOR TO THE FILING OF THE PETITION FOR ADOPTION.

{¶10} In his assignments of error, Stepfather argues that the trial court erred in adopting the magistrate's decision that found that the consent of the biological father was necessary to proceed with the petition for adoption. Specifically, Stepfather argues that consent of the biological father was not necessary because Father was not justified in failing to provide more than de minimis contact with M.F. and failing to provide maintenance and support for M.F. in the year prior to Stepfather's petition for adoption.

{¶11} The right to parent one's children is a fundamental right. *Troxel v. Granville*, 530 U.S. 57, 66 (2000); *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 28. Parents have a "fundamental liberty interest" in the care, custody, and management of the child. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). In recognition of the significance of that fundamental interest, the Ohio Supreme Court has described the permanent termination of parental rights as "the family law equivalent of the death penalty in a criminal case." *In re Hayes*, 79 Ohio St.3d 46, 48 (1997). Therefore, parents "must be afforded every procedural and substantive protection the law allows." *Id.* This includes notice and an opportunity to be heard when a parent faces the risk of termination of his or her parental rights. *In re Z.H.*, 9th Dist. Summit No. 26844, 2013-Ohio-3904, ¶ 14, citing *In re Thompkins,* 115 Ohio St.3d 409, 2007-Ohio-5238, ¶ 13. In regard to the permanent termination of parental rights specific to the context of adoptions, as a general rule, the biological parent must consent and may withhold consent to adoption. R.C. 3107.06; *see also In re Adoption of G.V.*, 126 Ohio St.3d 249, 2010-Ohio-3349, ¶ 6 (stating "Because adoption terminates fundamental rights of the natural parents, * * * [a]ny exception to the requirement of parental consent [to adoption] must be strictly construed so as to protect the right of natural parents to raise and nurture their children."). The biological parent's consent is not required, however, in certain limited circumstances.

**{¶12}** R.C. 3107.07(A) provides that a parent's consent to adoption is not required if it is alleged in the adoption petition and the court finds by clear and convincing evidence that:

> the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.

**{¶13}** "Because R.C. 3107.07(A) is written in the disjunctive, either a failure to communicate or a failure to provide support for the one-year time period is sufficient to obviate the need for a parent's consent." *In re Adoption of A.H.*, 9th Dist. Lorain No. 12CA010312, 2013-Ohio-1600, ¶ 9, citing *In re Adoption of McDermitt,* 63 Ohio St.2d 301, 304 (1980). "The petitioner has the initial burden of establishing, by clear and convincing evidence, that the parent has failed to support and/or have contact with the children for at least the requisite one-year period." *In re Adoption of A.H.*, 9th Dist. Lorain No. 12CA010312, 2013-Ohio-1600, ¶ 12, citing *In re Adoption of Bovett,* 33 Ohio St.3d 102 (1987), paragraph one of the syllabus. "Once the petitioner has established, by clear and convincing evidence, that the natural parent has failed to support the child for at least the requisite one-year period, the burden of going forward with the evidence shifts to the natural parent to show some facially justifiable cause for such failure. The burden of proof, however, remains with the petitioner." *Bovett,* 33 Ohio St.3d at paragraph two of the syllabus.

A. Failure to provide maintenance and support

**{¶14}** "[T]he question of whether justifiable cause for failure to pay child support has been proven by clear and convincing evidence in a particular case is a determination for the probate court and will not be disturbed on appeal unless such determination is against the manifest weight of the evidence." *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, ¶

24, quoting *In re Adoption of Masa*, 23 Ohio St.3d. 163 (1986), paragraph two of the syllabus. It is the parent's overall "ability to pay [that] is a key factor in determining whether there is justifiable cause for failure to support a child." *In re Adoption of Masa,* 23 Ohio St.3d 163, 167 (1986). "To determine whether the parent is financially capable of paying support requires an examination of the amount of income from all sources, the amount of the support order, and the entire financial situation including the types and amounts of other financial obligations." *In re Adoption of A.H.*, 9th Dist. Lorain No. 12CA010312, 2013-Ohio-1600, ¶ 15.

{¶15} In this case, Stepfather met the initial burden of proving that Father did not provide support payments in the one-year period prior to the petition for adoption. Mahoning County Child Support records presented in the evidentiary hearing before the magistrate showed that the last support payment was received on August 19, 2011. Father does not dispute that he did not make support payments after that date, including the one-year period prior to the petition for adoption. Given that Stepfather established Father's failure to pay, Father was required to go forward with evidence showing "some facially justifiable cause for such failure." *Bovett*, 33 Ohio St.3d at 104.

{¶16} The probate court properly found that Father's failure to provide support payments was justified because he was financially incapable of paying his support obligations. Father has been unemployed since 2006. Since losing his job, Father made attempts to secure employment in his profession. Despite efforts during and after his criminal investigation and trial, he has been unable to find employment. Thus, Father did not have employment income from which he could fulfill his support obligations.

{¶17} After losing his job, Father had four other financial resources: (1) income property, (2) unemployment compensation, (3) retirement funds, (4) and generosity of his

siblings. In the 2006 divorce settlement between Father and Mother, Father received a home owned by the couple. To meet his needs and obligations, he sold the home. Father used the proceeds from the sale of the home to cover his expenses until 2008. After the proceeds from the sale of the home were exhausted, Father relied upon unemployment compensation to meet his needs and obligations. Additionally, Father moved into his brother's home in 2008 to decrease his expenses. During this time, Father paid his child support obligations using proceeds of the sale of the home and his unemployment compensation.

{¶18} Subsequently, Father relied on retirement funds to meet his needs and obligations. The retirement funds consisted of a 401(k) plan. Father withdrew six hundred dollars per month. He was able to stay current on his obligations, including his child support obligation, until the retirement funds were fully expended.

{¶19} The investigation of Father and his criminal case took nearly two years and eight months to resolve. During this time, Father borrowed money from his siblings to pay his legal bills and continued to live with his brother. Father sought employment while the case was pending and after his case was resolved. However, he has been unable to secure employment.

{¶20} Father's overall ability to pay, viewed in light of each financial resource, shows that Father was unable to provide maintenance and support to his child. Father has had no employment income since 2006, despite attempts to secure employment in his field. During this period of unemployment, Father liquidated property, took steps to decrease his expenses, exhausted unemployment benefits, and cashed out his retirement savings. He relied on the generosity of his siblings to meet his needs and obligations. Despite his financial circumstances, Father made support payments until August 19, 2011, the point at which his financial resources were fully exhausted. Because Father's resources were depleted, he was financially incapable of

paying his support obligations and his subsequent failure to provide maintenance and support was justifiable.

B. Failure to provide de minimis contact

{¶21} Some courts have held that a "no contact" court order constitutes justifiable cause for a parent's failure to communicate with his children. *See, e.g., In the Matter of the Adoption of Bryan W.*, 6th Dist. Huron No. H–96–039, 1997 WL 224968 (May 2, 1998). To determine whether the lack of communication was justified, the specific language and terms of the order must be examined to determine whether the court order prohibited all communication by the parent. *See In re Adoption of K.K.*, 9th Dist. Lorain Nos. 05CA008849 and 05CA008850, 2006-Ohio-1488, ¶12.

{¶22} Stepfather met the initial burden of proving that Father did not provide more than de minimis contact in the one-year period prior to the petition for adoption. Father does not dispute that he did not communicate with the child in the year preceding the petition for adoption. Because Stepfather established a lack of communication, the burden of going forward with evidence shifted to Father to demonstrate some facially justifiable cause for his failure to communicate. *Bovett*, 33 Ohio St.3d at 104.

{¶23} The Municipal Court of Allegheny County, Pennsylvania, issued three bail release conditions to Father on May 12, 2010. The second condition stated in its entirety, "You are to have no contact with the victim." In this case, the alleged victim was his daughter, M.F. The order contained no qualifying terms and made no provision for any sort of approved contact. This order remained in place until Father's case was disposed on January 13, 2013. By complying fully with the terms of this order, Father was legally prevented from having any contact with his child for eleven of the twelve months preceding the petition for adoption.

**{¶24}** After the order was lifted, Father attempted to contact the child. Three days after Father's case was disposed, Father used a court-approved email to contact Mother and Stepfather to reestablish the previously approved visitation schedule. After he received no response, Father attempted to contact Mother via an alternate email address. Father did not receive a response to the second email. Twenty seven days after the second email was sent, Stepfather filed the petition for adoption. Thus, Father made two attempts to reestablish contact with the child, both of which occurred during the final month of the one-year look back period required by R.C. 3107.07.

**{¶25}** Because the no contact order prevented Father from having contact with his daughter during the first eleven months of the one-year look back period and Father made multiple attempts to contact his daughter through Mother during the remaining month of the one-year look back period, Father's failure to provide more than de minimis contact was justified.

C. Conclusion

**{¶26}** The probate court did not err in finding that, although Father failed to provide maintenance and support and failed to provide more than de minimis contact during the requisite one-year look back period prior to Stepfather's petition for adoption, he showed justifiable cause for his failures. Therefore, Father's consent was necessary to proceed with the petition for adoption. Accordingly, the assignment of error is overruled.

II.

**{¶27}** Stepfather's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Probate Division is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
MOORE, J.
CONCUR.

APPEARANCES:

JEFFREY V. HAWKINS, Attorney at Law, for Appellant.

RICHARD FOLEY, pro so, Appellee.