[Cite as *In re Adoption of A.W.P.*, 2017-Ohio-5479.]

STATE OF OHIO ) IN THE COURT OF APPEALS
)ss: NINTH JUDICIAL DISTRICT
COUNTY OF LORAIN )

IN RE: ADOPTION OF A.W.P.

C.A. No. 16CA011037

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No. 2015AD00014

DECISION AND JOURNAL ENTRY

Dated: June 26, 2017

TEODOSIO, Judge.

{¶1} Appellant, Ronald S. ("Father"), appeals from a judgment of the Lorain County Court of Common Pleas, Probate Division, that determined that his consent was not necessary to the adoption of his minor child by the child's stepfather, Dustin P. ("Stepfather"). This Court affirms.

{¶2} Father is the biological father of A.W.P., who was born in Cuyahoga County on October 19, 2009. Father was never married to the child's mother ("Mother"). Although he initially filed a juvenile court action to establish his parental rights shortly after the birth of A.W.P., he later dismissed that action. Father filed another action in 2012 and, pursuant to an agreement between the parties, Father began visiting A.W.P. during January 2013. A visitation schedule was filed as an order of the juvenile court at the end of February 2013.

{¶3} By that time, Mother had married Stepfather and the couple was living in Lorain County with A.W.P. Shortly after Father started visiting A.W.P., Mother and Father began

arguing via telephone and email. Stepfather contacted Father via email and instructed him to direct all communications to him via telephone or email. On March 3, 2013, Father filed a motion in the juvenile court to enforce his visitation rights, asserting that Mother and Stepfather were interfering with his rights under the visitation order. Before the scheduled hearing date, however, Father dismissed his motion. He did not file any other motions in the juvenile court or make any other attempts to visit or communicate with A.W.P.

{¶4} On April 6, 2015, Stepfather filed a petition to adopt A.W.P. He alleged, among other things, that Mother consented to the adoption and that Father's consent to the adoption was not necessary under both grounds set forth in R.C. 3107.07(A). Specifically, he alleged that, for at least one year prior to the filing of the petition, Father had failed without justifiable cause to either financially support A.W.P. or maintain more than de minimis contact with him. A hearing on the necessity of Father's consent was originally scheduled for January 26, 2016, but the trial court later rescheduled it for March 29, 2016.

{¶5} For reasons not explained in the record, Father began serving a term of incarceration during June 2015, and remained incarcerated throughout the remainder of these proceedings. Father filed several alternative motions with the probate court to enable him to participate in the consent hearing despite his incarceration. Father retained counsel four days before the consent hearing, which was held before a magistrate on March 29, 2016. Father participated in the hearing via telephone conference.

{¶6} The magistrate later decided that Father's consent to the adoption was not necessary because he had failed to maintain sufficient contact or provide A.W.P. with financial support during the one-year look-back period. Father filed timely objections to the magistrate's decision, which were overruled by the trial court. The trial court entered an independent

judgment that Father's consent to the adoption was not necessary.  Father appeals and raises four assignments of error, which will be rearranged and consolidated to facilitate review.

I.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION FOR A CONTINUANCE, THEREBY DENYING HIM DUE PROCESS.

**{¶7}**    This Court will address Father's second assignment of error first because it asserts that the consent hearing was held in violation of Father's right to due process.  Specifically, Father asserts that that the trial court erred in failing to grant him a continuance of the consent hearing.

**{¶8}**    The decision to grant or deny a continuance lies within the sound discretion of the trial judge, which requires a balancing of "any potential prejudice to a [party against] concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." *State v. Unger*, 67 Ohio St.2d 65, 67 (1981).  A trial court's determination of whether to continue a hearing should consider:

> the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.

*Id.* at 67-68.

**{¶9}**    On February 16, 2016, Father filed a motion to continue the hearing until October 18, 2016, because he was incarcerated and was not scheduled to be released until October 17.  Father contributed to those circumstances because it was his own criminal behavior that caused

his incarceration. The consent hearing had already been continued from January 26 until March 29, and Father had requested that the hearing be continued for almost seven more months.

{¶10} Moreover, the same day that Father filed his motion to continue the hearing, he filed several alternative motions, including a motion to participate in the scheduled March 29 hearing via an alternative method approved by the court that would ensure his "direct participation at the Consent Hearing." Father supported his request to participate in the hearing via an alternative means by stating that he "wishe[d] to exercise his right to present direct evidence and testimony at the Consent Hearing scheduled for 3/29/2016" and that his correctional facility had the equipment to facilitate his participation via telephone conference.

{¶11} On March 15, 2016, the trial court granted Father's request to participate in the hearing via alternative means and ordered that Father was responsible for setting up the communication method with the court. At the beginning of the March 29 hearing, Father's counsel explained that she had recently been appointed and had not had much time to prepare for the hearing, but that she understood that Father had filed several motions, including a request for a continuance and a motion to appear at the hearing via alternative means. After the magistrate and Father's counsel briefly discussed the status of Father's motions, they were able to arrange for Father to participate in the hearing via telephone conference. Father participated in the entire hearing, privately conferred with his counsel off the record, and counsel presented several witnesses on Father's behalf, including Father himself.

{¶12} Father has failed to demonstrate that he was denied due process or that the trial court abused its discretion by failing to grant his alternative motion to continue the consent hearing until October 18, 2016. Father's second assignment of error is overruled.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN FINDING THAT APPELLANT'S CONSENT WAS NOT REQUIRED PURSUANT TO [R.C.] 3103.07(A).

**ASSIGNMENT OF ERROR III**

THE TRIAL COURT'S DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶13} Father's first and third assignments of error challenge the trial court's determination that his consent to the adoption of A.W.P. was not required. Pursuant to R.C. 3107.07(A), a parent's consent to a minor child's adoption is not required if "it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding * * * the filing of the adoption petition[.]"[1]

{¶14} Father does not dispute that grounds were alleged in the petition or that he received proper notice of the petition and the consent hearing. Instead, he confines his challenge to the evidence supporting the trial court's findings that Stepfather had proven both grounds: lack of sufficient contact and failure to pay support for the one-year lookback period. By the explicit terms of R.C. 3107.07(A), however, "a petitioner wishing to adopt need only prove *either* that the natural parent failed to communicate *or* failed to provide maintenance and support." (Emphasis sic.) *In Matter of Adoption of Jarvis*, 9th Dist. Summit No. 17761, 1996 WL 724748,

---

[1] Although R.C. 3107.07(A) provides an alternative one-year period preceding the placement of the child in the petitioner's home, that was not the focus of the evidence in this case.

*3 (Dec. 11, 1996), citing *In re Adoption of McDermitt*, 63 Ohio St.2d 301, 304 (1980). The petitioner must establish an unjustified lack of support or communication by clear and convincing evidence, as adoption terminates the natural parent's parental rights. *In re Adoption of P.A.C.*, 126 Ohio St.3d 236, 2010-Ohio-3351, ¶ 5.

{¶15}  Because the trial court's decision was supported by clear and convincing evidence about Father's unjustified lack of contact, this Court will confine its review accordingly. The parties presented evidence about Father's lack of contact with A.W.P. over an extended period of time, including after the adoption petition was filed, but the relevant look-back period in this case was one year immediately prior to the filing of the adoption petition on April 6, 2015. Consequently, Father's incarceration during June 2015, was not relevant to his lack of contact with A.W.P. during the one year before April 6, 2015.

{¶16}  Father does not dispute that he had no contact with A.W.P. for more than one year before Stepfather filed the adoption petition. Instead, Father argues that his lack of contact was justified because Mother and Stepfather created obstacles to his ability to visit or communicate with A.W.P. Although Father correctly asserts that Mother changed some of her contact information, the evidence was not disputed that Father knew the family's home address, as well as Stepfather's telephone number and email address, and that none of that contact information had changed during the relevant period of time.

{¶17}  Father visited with A.W.P. only a few times during early 2013.  Because communication between Father and Mother became hostile, Stepfather emailed Father and told him to communicate with him instead.  Father communicated with both Stepfather and Mother for the next few months only.

{¶18} During late February 2013, Father filed a show cause motion in the juvenile court to enforce his court-ordered visitation rights. On March 7, 2013, Father sent an email message to Mother that he would "cease all visitation and phone calls until we go to court as there is just too much fighting now." For reasons not explained at the consent hearing, Father dismissed the juvenile court motion during April 2013.

{¶19} Father testified at the hearing that, although he considered going back to juvenile court to enforce his visitation rights, he never did. During the relevant period of April 2014 until April 6, 2015, Father made no further attempts to contact Mother, Stepfather, or A.W.P. Although Father suggested that he was afraid of Stepfather, there was no evidence that Stepfather had ever threatened him. Moreover, Father had a court order that entitled him to time with his child. Although he did not follow through, Father demonstrated during 2013, that he had the ability to return to the juvenile court, without the assistance of counsel, to enforce the visitation order. The evidence was not disputed that Father had made no attempts since April 2013, to visit or communicate with A.W.P. and that there was no justification for his lack of contact.

{¶20} Consequently, Father has failed to demonstrate any error in the trial court's conclusion that Father's consent to adoption was not required because he had "failed without justifiable cause to provide more than de minimis contact with A.W.P." Father's first and third assignments of error are overruled.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT [ERRED] IN FINDING THAT PROBATE COURT CAN PROCEED WITH AN ADOPTION WHILE RECENTLY FILED [MOTIONS] IN JUVENILE COURT REMAIN UNRESOLVED.

**{¶21}** Father's counsel conceded during oral argument to this Court that there were no motions pending in juvenile court when Stepfather filed the adoption petition in probate court. Consequently, Father's fourth assignment of error lacks merit and is overruled

## III.

**{¶22}** Father's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas, Probate Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

CALLAHAN, J.
<u>CONCURS.</u>

CARR, P. J.
<u>CONCURRING IN JUDGMENT ONLY.</u>

{¶23} I concur in the majority's decision that Father's consent to the adoption was not necessary, but on a different basis. The evidence was not disputed that he failed to provide A.W.P. with even de minimis financial support during the relevant one-year period. *See* R.C. 3107.07(A). No child support order existed, but he had a statutory obligation to financially support his child and he was not incarcerated until after the relevant look-back period. *See* R.C. 3103.031.

<u>APPEARANCES</u>:

CAROL DILLON HORVATH, Attorney at Law, for Appellant.

BETTY BURLEY, Attorney at Law, for Appellee.